SMITH, Judge.
After the trial of this negligence action in the court below, the jury returned a verdict in favor of the plaintiff, and judgment was entered thereon. The defendants have appealed, contending (1) that the lower ■court erred in failing to grant their motion for directed verdict; and (2) that the verdict and judgment are so contrary to the manifest weight of the evidence that justice requires a new trial. We find merit in the latter contention and reverse.
The plaintiff, Mrs. Rowe, driving a 1950 Chevrolet sedan, left Miami at about noon for a visit in Copeland, which is about seventy miles west of Miami. Accompanying the plaintiff were a Mrs. Garner, two Garner children, and the plaintiff’s infant daughter. After visiting for a while in Copeland, the plaintiff set out on the return trip to Miami, driving easterly on the Tami-ami Trail. During the course of the afternoon, Mrs. Rowe had consumed at least six beers, sometimes drinking at the place of purchase and sometimes drinking as she drove. At approximately 6 :30 P. M., about fifty miles west of Miami, the plaintiff’s automobile collided with a west-bound trailer truck owned by the corporate defendant and driven by Albert Wilder.
At the time of the accident it was already dark. The collision occurred on a section of the Tamiami Trail that was under construction. There was no paved surface on the road, and there was no designated center line. Apparently, there were no traffic control signs. There were some pot holes in the road, and on the southern side of the road (the plaintiff’s side) there were piles of dirt which the plaintiff said extended onto the roadway. Photographs depicting the scene of the accident do not show any piles of dirt extending into the roadway at the point of collision. All of the witnesses testified that the road at this point was wide enough for vehicles to pass. There were no curves or bends in the road for many miles either way.
The plaintiff testified that she had driven for about one-half mile on the section of the road under construction when she first saw the defendant’s vehicle. She stated that, when she first observed it, the approaching vehicle was about one-half mile away and that she thought it was a motorcycle because she saw only one headlight. She testified that she saw no clearance lights on the vehicle. The plaintiff did not realize that the vehicle was a truck until she looked directly at it for the second time, at which point the truck was only six feet away. In explaining why she did not see the truck in the intervening time, Mrs. Rowe could only say that she did not keep her eyes on the approaching vehicle, but on the road. The plaintiff testified that she was driving between thirty-five and forty *723 miles per hour; that she had her headlights operating; and that she was driving about two feet away from the edges of the dirt piles that extended into the roadway.
Both of the truck’s headlights burned on high beam, but on low beam only the right headlight burned. There was a witness traveling in the same direction as the plaintiff (and fairly close behind her) who testified that he saw the truck’s headlights “blink” from low to high beam at least twice. Wilder testified that he switched his headlights from low to high beam because the plaintiff would not “give him dimmers.” Neither the plaintiff nor the witness following her observed the clearance lights on the truck, but Wilder testified that they were on. Wilder stated that he had slowed down to fifteen miles per hour as the two vehicles approached each other and that, when the plaintiff’s car was about fifty feet away, he realized that there was going to be a collision. He decreased his speed to about five miles per hour and then veered slightly to the right. According to Wilder, the plaintiff did not alter the course of her automobile: “There wasn’t any zigzagging. She came as straight as she could into the truck.” The witness following the plaintiff testified that the truck veered to the right just before the collision. Wilder applied his brakes before the collision, but the plaintiff did not. The evidence establishes without contradiction that the left front of the plaintiff’s automobile struck the left side of the truck near the running board and near the left saddle tank at the rear of the cab door.
The exact width of the roadway available for travel to the two vehicles was a question of fact upon which there was some difference. The issue was important because there was a question of whether the plaintiff stayed on “her side” of the road. The highway patrolman who investigated the accident testified as to his actual measurements; other witnesses testified as to their estimates of the width of the road. However, all of the witnesses agreed that there was no paved surface on the roadway and, of course, no center line. Thus, even with measurements, there would be no way to determine exactly where the middle of the road is, for the point of beginning and the point of terminating the measurements would be a matter of opinion and not a matter of certainty. As regards the positions of the vehicles at the moment of impact, the testimony of the witnesses varies. The patrolman stated that the point of impact was eight feet, two inches across and into the defendant’s lane of travel. The plaintiff stated that she was driving “in the middle of the road” to keep clear of the piles of dirt at the roadside. She said that she did not know but “guessed” she hit the truck “over on his side of the road so far as the width of the road is concerned.” She stated that she could not be sure about whose side of the road the collision occurred on because there was no middle line. Such testimony of the plaintiff does not deny or contradict the testimony of the other witnesses. It must be concluded that the testimony establishes that the plaintiff’s automobile was in the defendant’s lane of traffic. The conflict was only as to how far into the defendant’s lane the plaintiff was. Affording every reasonable presumption to the plaintiff’s testimony, the fact remains that she was at least in the middle of the road at the time of the collision.
We cannot say that the undisputed facts show that there was no negligence on the part of the defendant, for the reason that § 317.47,, Florida Statutes, F.S.A., required that the defendant’s truck have two headlights, and § 317.46 Florida Statutes, F.S.A., required that such headlights should have been operating at the time of the accident. The failure to comply with said statutes was prima facie evidence of the defendant’s negligence. Alessi v. Farkas, Fla.App.1960, 118 So.2d 658.
In the first appearance of the instant cause in this Court, Morrison v. C. J. Jones Lumber Co., Inc., Fla.App.1961., 126 So.2d 895, we held that the pertinent portions of *724 § 317.25, Florida Statutes, F.S.A.,[1] when considered in the light of the plaintiffs testimony, only precluded a finding that the evidence on behalf of the plaintiff established contributory negligence as a matter of law. Our holding there, however, did not necessarily preclude the entry of a directed verdict in favor of the defendants at the close of all of the evidence, if the defendants’ evidence established, without question of fact, that the accident was proximately caused by the plaintiffs negligence. Furthermore, neither the decision in the first appeal of this cause nor the instant decision should be construed as relieving a driver of a motor vehicle from negligence in leaving his right half of the roadway (even if his right half is closed to traffic while under construction or repair), thereby bringing about a collision with a vehicle proceeding upon the other half of such roadway.
Viewing the evidence as a whole, in the light of the limitations upon the authority to direct a verdict which are fully set out in Brookbank v. Mathieu, Fla.App.1963, 152 So.2d 526, (Third District Court of Appeal), we cannot conclude that the facts here show without material controversy, although it is admittedly a close question, that the negligence of the plaintiff appreciably caused or was the sole proximate cause of the accident, so as to entitle the defendants to a directed verdict.
After careful review of the entire record in this cause; indulging every reasonable presumption in favor of the correctness of the verdict of the jury and the judg-ent rendered by the trial court; bearing in mind that it is the province of the jury to determine disputed questions of fact; considering fully every inference that the jury could logically draw from the evidence; and noting that the trial court placed his stamp of approval thereon by entering judgment and denying defendants’ motions for a new trial, we are compelled to the conclusion that this verdict and judgment does not square with right and justice; that there is reasonable ground to conclude that the jury acted through sympathy,, passion, prejudice, mistake or other unlawful cause and it is our duty to grant a new trial. See Florida Publishing Company v. Copeland, Fla. 1956, 89 So.2d 18; Stanley v. Powers, 1936, 125 Fla. 322, 169 So. 861.
The judgment is reversed with directions to grant the defendants a new trial.
ALLEN, J., concurs.

. “Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

“(2) When the right half of a roadway is closed to traffic while under construction or repair.”